**UNITED STATES of America, for the Use and Benefit of William R. CARLSON, d/b/a W. R. Taylor & Co., Plaintiff-Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.**

No. 27459

Summary Calendar.

United States Court of Appeals Fifth Circuit.

Aug. 1, 1969.

Richard L. Lapidus, Miami, Fla., for defendant-appellant.

Bert H. Lane, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

█ Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804.

This action was brought under the Miller Act, 40 U.S.C. § 270a et seq. The question for decision is whether summary judgment was properly granted against a general contractor's surety upon failure of a subcontractor to reimburse a materialman. Finding no error, no genuine issue of fact and that appellee is entitled to judgment as a matter of law, we affirm the District Court. See Rule 56, Fed.R.Civ.P.

The Development Corporation of America entered into an agreement with the United States to furnish labor and materials in connection with the construction of bachelor officers quarters to the U.S. Naval Air Station, Pensacola, Florida. Appellant Continental Casualty Company, as surety for Development Corporation, prime contractor, executed a standard Government form of payment bond whereby it bound itself to make payment to all persons supplying labor and material in the prosecution of the work. The prime contractor thereafter entered into a subcontract with Owen

Plastering Company, which company requested William R. Carlson, use plaintiff, to furnish certain materials for the project. Use plaintiff complied but the subcontractor defaulted in its payment in the sum of $9,552.83. Consequently, in compliance with the Miller Act provisions, use plaintiff notified the prime contractor of the default within ninety days of furnishing the last materials.

On motion by use plaintiff, which incorporated the pleadings, an affidavit and deposition of use plaintiff, answers to interrogatories, exhibits consisting of the ledger account of plaintiff, invoices and dray tickets showing the material furnished, the price thereof, the Government project number and location of the jobsite, the District Court granted summary judgment.

Appellant's contention on appeal is that since use plaintiff has not shown that the materials were used on the job, he is required to prove that he reasonably believed they were so intended and in good faith supplied them, and that such proof has not been made. Appellant further contends that summary judgment was improper as it was granted upon hearsay testimony.

■ Several well-established principles have emerged from Miller Act cases. It is fundamental that in order for a materialman to recover under the Act it is necessary only that he show that the materials were supplied in prosecution of the work provided for in the contract, that he has not been paid therefor, that in good faith he had reason to believe the materials were intended for the specified work, and that he complied with the jurisdictional requisites. It is immaterial to his right of recovery that the materialman deliver the materials to the jobsite or that such materials actually be used in the prosecution of the work. Riley-Stabler Const. Co. v. Westinghouse Electric Corp., 5 Cir., 1968, 396 F.2d 274, 276, 277; Boyd Callan, Inc. v. United States, 5 Cir., 1964, 328 F.2d 505, 511; Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 1946, 153

F.2d 527, 529. Nor is diversion of materials a valid defense if the supplier has acted in good faith. Riley-Stabler, supra at 276, 277; Glassell-Taylor, supra at 530. Another precept which we may derive from Miller Act litigation is that the Act is highly remedial in nature and is "entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those who furnish labor or materials for public works." Glassell-Taylor, supra at 529, 530; Boyd Callan, Inc., supra at 512.

Appellant, in urging that summary disposition of the matter was improper, relies principally on this Court's decision in Riley-Stabler Const. Co. v. Westinghouse Electric Corp., 1968, 396 F.2d 274, and the Supreme Court decision of Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Riley-Stabler involved an interpretation of an Alabama statute which was the counterpart of the Miller Act. This Court, in reversing the District Court's summary judgment, said, 396 F.2d at 277: "[I]t is our opinion that as a general proposition the issue of good faith is inappropriate for determination by summary judgment procedure. A factual dispute on that issue can more properly be resolved on trial of the case." Later, in denying a petition for rehearing in Riley-Stabler Const. Co. v. Westinghouse Electric Corp., 1968, 401 F.2d 526, the majority of the Court noted that "good faith" was at issue as it had been raised by affidavit of the defendant corporation alleging "that a substantial portion of material had been used on [other] projects." However, the Court said, "It is only where there has been a diversion that there would be any necessity for raising the question of good faith." Id. at 527.

■ In the present case appellant has alleged no facts, by countervailing affidavit or otherwise, which would put appellee's good faith at issue. At the instance of opposing counsel, appellee was thoroughly examined on deposition, and

his answers are consistent with the other evidence offered in the record. The entire basis for appellant's defense appears to be its contention that appellee has not affirmatively borne the burden of proving good faith. Whether it was incumbent upon appellant to meet such a burden under the circumstances of this case, we need not decide, for the record amply demonstrates that good faith did in fact exist.

The Supreme Court decision of Poller v. Columbia Broadcasting System, supra, is of no advantage to appellant. The only unifying factor between that decision and this case is that both cases entail use of summary judgment. *Poller* reiterates the well-established principle that summary procedure should be avoided and litigants must be afforded their right to jury trial when "they really have issues to try." 368 U.S. at 467, 82 S.Ct. at 488. It is inapposite to the present case, however, for at least three reasons. First *Poller* was a "complex antitrust litigation where motive and intent play leading roles," 368 U.S. at 473, 82 S.Ct. at 491;[1] secondly, the issue of good faith was not only raised, it was of the essence of the suit; and, thirdly, respondent's affidavits in response to the motion for summary judgment did not effectively contravene the many factual allegations of the petitioner.

■ Appellant's second contention that summary judgment was based on hearsay evidence is without merit. This argument is based on the fact that use plaintiff admitted that his only knowledge that the materials were used on the job, rather than on three other jobs in which the subcontractor was engaged, came from Owen. Appellant contends, "If the summary judgment was based upon proof that the materials were actually delivered to or used in the Development Corporation's job it was error." The statements were neither inadmissible hearsay nor were they necessary in order for the Court to make its determination. We reiterate that neither delivery of the materials to nor use by the contractor is necessary in order for appellee to recover. Moreover, in considering hearsay, "The inquiry is not the *truth* of the words said, merely whether they were said." And "The verbal act, as any other act, may be proved by one who heard it, saw it, or felt it." General Tire of Miami Beach, Inc. v. N. L. R. B., 5 Cir., 1964, 332 F.2d 58, 60, 61.

■ Applying the Miller Act requirements to the facts of this case, we find that the District Court was unquestionably correct in summarily disposing of the case. Use plaintiff has shown in great detail, by the pleadings and documentary evidence, the specific material ordered by the subcontractor for the Government project, that he supplied same, and that he was not reimbursed therefor.[2] He also fulfilled the procedu-

---

1. It is true that in Riley-Stabler Const. Co. v. Westinghouse Electric Corp., 5 Cir. 1968, 401 F.2d 526, 527, the *Poller* decision was cited as authority for the unusualness of summary procedure where an issue requires determination of state of mind. But as we have already noted, it was the opinion of the majority of the Court in *Riley-Stabler* that good faith was at issue. However, see Judge Godbold's dissent in the original opinion at 396 F.2d 278.

2. In an attempt to further substantiate his claim for payment, use plaintiff sought out Mr. Owen of Owen Plastering Company, the subcontractor, after default. As an accommodation to use plaintiff, Owen verified the unpaid invoices by signing same. Appellant objects to the District Court's consideration on summary judgment of these invoices because of their "hearsay" character. It is also to this encounter that appellant attributes lack of good faith. Whether the District Judge attached any significance to the fact that the instruments were signed is unimportant. There was sufficient evidence, all of it undisputed, to support the judgment. Verification by Owen of the existing debts was mere surplusage. The evidence shows that Owens' orders were filled direct from plaintiff's stock when the material was on hand; when it was not, use plaintiff ordered the materials from the manufacturer and had

ral requisites of the statute by furnishing written notice to the contractor within ninety days from the date he last supplied material and instituted suit within the time limit required by the Act. This Court has upheld the salutory effect of summary judgments in Miller Act cases. In Bruce Construction Corp. v. United States, 1957, 242 F.2d 873, 875, we affirmed a summary judgment against a contractor and its surety, noting that "when a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and, of course, he does not do that by mere denial or holding back evidence." See also Boyd Callan, Inc. v. United States, supra, affirming summary procedure in a Miller Act case. In the present case appellant has admitted that the use plaintiff furnished materials to the subcontractor Owen Plastering Company. It has presented no evidence to deny that the specific materials were delivered or used by its principal, that they were diverted to another job, or any evidence which raises an issue of bad faith. Appellant, in short, has produced no evidence to controvert the imposing and convincing collection of factual data supplied by use plaintiff.

Affirmed.

GODBOLD, Circuit Judge (specially concurring):

This case demonstrates the difficulty created by the language of the majority opinion in Riley-Stabler Construction Co. v. Westinghouse Electric Corp., 396 F.2d 274 (5th Cir. 1968). In another summary judgment case the courts are urged by the surety that they must delve into the recesses of the supplier's mind and explore a penumbra of unknown limits beyond the requirements of the Miller Act, to ascertain not only whether the

supplier knew the materials were "in the prosecution of the work" but what the supplier reasonably should have known as well.

The majority do not decide whether the supplier, in order to secure a summary judgment in a Miller Act case, must bear the burden of affirmatively showing that he was acting in "good faith." I would lay that issue to rest here and now. In a summary judgment case once the supplier presents in the form required for factual matter under Rule 56 objective evidence that he supplied materials for the prosecution of the work he is entitled to summary judgment unless the surety comes forward with facts indicating he did not do so. Neither the Act, nor summary judgment procedures, requires the supplier affirmatively show he is honest, reliable, pure-hearted and very careful as well. Until the implications to the contrary are dissipated summary judgment is drained of its usefulness in an area in which it is peculiarly valuable, and the alert surety can force cases to trial on issues that are not embraced in the Act.

them shipped direct to Owen. Receipts for material received directly from use plaintiff (all signed by an employee of Owen), the manufacturer's dray receipts and the invoices of use plaintiff

show the destination of the material to be the Government project, and correspond in every pertinent detail. There are no inconsistencies.